DowNEt, Judge,
delivered the opinion of the court.
The action is to recover amounts deducted by the accounting officers from bills rendered by plaintiff for transportation furnished for the Army and Navy in 1916 and 1917, beginning in September of the first-named year. Minor discrepancies in some of the bills as first rendered have been adjusted, so that we find no controversy as to the amounts stated in the findings, the only defense presented going to the whole claim upon a single proposition.
For various reasons, which it was assumed would operate beneficially to both parties, several different military “ agreements ” or “ arrangements ” with reference to transportation rates were entered into between the carriers of the country, represented by their associations, and duly authorized officers of the Army, Navy, and Marine Corps. It is unnecessary to cite all of them, the one herein particularly in question being the so-called western military arrangement, dated April 1, 1916, and effective July 1, 1916. It and preceding agreements were in force at the time the transportation here *337 involved was furnished, and it was followed by the inter-territorial military agreement effective January 1, 1917.
We do not deem it necessary to enter into a detailed discussion of the various provisions of the agreement in question even though the forced conclusion might be determinative of the case. The defense presented, reaching back to announced views and action of the accounting officers, reduces the question to narrow compass. The findings made' are an adoption of plaintiff’s requested findings not only because they are deemed to state correctly such of the facts as are necessary but because, so far as the facts are concerned, the defendant makes no objection to them. The sole objection of the defendant to plaintiff’s requested findings is, referring to Finding VI, that “ they do not state the fact that claimant company, together with others, who were parties to the interterritorial military agreement and other agreements referred to in the previous requests, entered into these agreements in bad faith and for the purpose of taking advantage of defendant,” and in the brief it is argued that the “ claimant was one of the parties to a fraud perpetrated upon defendant and ought not to be heard to come into this court and seek to benefit by its fraudulent action.”
The basis of the contention that the Government of the United States, represented in these matters by the proper officers of the Army and Navy and Marine Corps, but being otherwise without the protection of a competent guardian, was “ overreached ” and defrauded, is found in the fact that while the agreement effective July 1, 1916, was being negotiated certain party rates were in effect which, after the negotiation of the agreement but before its effective date, were withdrawn.
Strangely the branches of the Government interested directly in the negotiation and operation of these agreements seem never to have learned that they were “ overreached ” or the victims of a fraud but have indicated their perfect willingness to continue to be victimized and defrauded although under no compulsion to do so. It remained apparently for the Auditor for the War Department and the *338 comptroller nearly two years after the agreement in question went into effect to discover tbe absence of “ some of the elements of fair dealing,” but the comptroller, concluding his opinion affirming the action of the auditor in the case then under consideration (24 Comp. Dec. 663), said:
“ The agreement so far as known to this office has not been canceled by any Government authority, and this decision is not intended to conflict therewith, but to be a reasonable construction thereof as applied to the particular case now under consideration.”
And in the report herein by the Navy Department Division of the General Accounting Office, dated October 17, 1921, it is said, referring to the method adopted in settling plaintiff’s accounts: “ If it is in violation of the strict terms of the arrangement, it is likewise a measure forced upon the Government by the questionable conduct of the carriers, and was resorted to in order to make possible an equitable adjustment of the situation,” and “ it (referring to the Government) had an unrestricted right to withdraw (article 18) but did not exercise that right, preferring to maintain the integrity of the arrangement in so far as it could be enforced with the party fare adjustment.”
Both statements indicate a desire to maintain the arrangement, due no doubt to advantages accruing thereunder to the Government, but a purpose to escape nonadvantageous results by construction. It is not contended that there was any provision requiring the maintenance of the party rates in question or prohibiting their withdrawal at any time, and we find no ground for concluding that the Government may avail itself of the contractual advantages and by the attempted construction escape the disadvantages. Upon the provisions of the agreement itself we deem the attempted construction and use of party rates unjustified.
But the defense herein does not attempt to justify a construction. It asserts an attempt to “ overreach ” the defendant and charges the perpetration of a fraud. It makes this serious charge in an attempt to avoid liability herein without any attempt to prove the charge except by hypotheses far from effective for the purpose and not altogether *339 founded on the facts. And it does this with full knowledge of the fact, cited in the report herein, and sufficient of itself to determine the question, that the Government had an unrestricted right to withdraw from the agreement in question at any time. Some of the party fares in question were withdrawn before the agreement became effective, July 1, 1916, and the Government might have withdrawn from the agreement before it ever became effective at all. It not only might have done so, but if it regarded the action of the railroad companies in withdrawing these fares as a violation of the agreement it should have done so rather than to continue to accept the benefits and a considerable time later make serious, unverified charges in attempted avoidance of a condition deemed disadvantageous.
But in fact it does not appear that those branches of the Government service which, in the exercise of their proper powers, made these agreements ever claimed that the railroad companies had acted unfairly or otherwise than within their rights, and these branches of the public service not only continued to operate under them and to pay their bills as therein provided so long as permitted, but six months after the effective date of the one here particularly in question they entered into another containing substantially the same provisions. Nothing in the record shows any dissatisfaction on their part, either with the agreements or the action of the railroad companies thereunder, but their continuance to operate under them when so doing was at their option implies strongly to the contrary. Determinative of the question is the simple fact that they were in force when this service was rendered and not susceptible of the construction applied in making the deductions here involved.
We find the defense presented without merit or justification and have directed judgment for the plaintiff in the sum of $38,865.28.
Geaham, Judge; Hat, Judge; Booth, Judge; and Campbell, Chief Justice, concur.